IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


RODERICK D. MCKINNON               *
                    Petitioner,
          vs.                      *      CIVIL ACTION NO. PJM-09-3131

J. F. CARAWAY, WARDEN              *
                    Respondent.
                                  ***

## <u>MEMORANDUM OPINION</u>

Roderick D. McKinnon ("McKinnon") is a U.S. Bureau of Prisons ("BOP") inmate currently confined at the Federal Correctional Institution at Cumberland, Maryland ("FCI-Cumberland"). On November 20, 2009, he filed this 28 U.S.C. § 2241 Petition for Habeas Corpus relief, seeking to expunge an adjustment and to have the rule violation reduced and forfeited good conduct time ("GCT") restored. Paper No. 1. McKinnon claims that the evidence entered at a January 2009 adjustment proceeding does not support a guilty finding for "fighting with another person," because "no one else was found guilty of violating [the rule] and "I cannot be found guilty without another inmate participating in the fight with me." Rather, he states that the evidence supports a lesser charge of "disruptive behavior." *Id.* McKinnon further asserts that he was not provided a written copy of the Disciplinary Hearing Officer's ("DHO") decision within 10 days as required under regulation. *Id.*

Warden Caraway has filed a Response to the Petition and McKinnon has submitted his Reply. Paper Nos. 4 & 5. Warden Caraway has now filed a court-ordered Surreply. Paper No. 7. The Court has reviewed the Petition and briefing and finds that an oral hearing is not necessary. *See* Local Rule 105.6. (D. Md. 2010). For reasons to follow, the Petition shall be denied and dismissed.

The BOP has the authority to provide for the protection, instruction, and discipline of all persons convicted of offenses against the United States. *See* 18 U.S.C. § 4042(a)(3). The rules for inmate discipline are promulgated under 28 C.F.R. §§ 541.14-541.21, and provide for an exhaustive process. If staff believe that a violation of a BOP regulation has been committed by an inmate, an incident report is prepared and the inmate is provided a written copy of the charges, ordinarily within 24 hours of the time staff become aware of the inmate's involvement in the incident. *See* 28 C.F.R. §§ 541.14(a) & (b)(2) and § 541.15(a).

An investigating officer reads the charges to the inmate and requests a statement from the inmate, advising him of his rights. After completion of the investigation, materials are forwarded to the Unit Disciplinary Committee ("UDC") for an initial hearing, which is ordinarily conducted within 3 working days. *See* 28 C.F.R. §§ 541.15(b). The inmate is entitled to be present at the hearing except during the deliberations of the decision makers or when institutional security would be jeopardized by the inmate's presence, and he may make a statement and present documentary evidence on his own behalf. *See* 28 C.F.R. §§ 541.15(c) & (d).

After considering all of the evidence presented at the hearing, the UDC makes a decision based on some facts and, if there is conflicting evidence, based on the greater weight of the evidence. *See* 28 C.F.R. § 541.15(f). If the UDC finds the inmate committed the prohibited act or a similar act if reflected in the incident report and determines that the violation is serious and warrants consideration for non-minor sanctions, the UDC refers the charges, without indication of findings as to the commission of the alleged violation, to the DHO for further proceedings. *See* 28 C.F.R. §§ 541.15(f)(1) & (3) and (h). If referred to the DHO, the UDC forwards copies of all relevant documents to the DHO with a brief statement of the reasons for the referral, along with any recommendation for appropriate disposition if the DHO finds the inmate committed the act(s)

charged.  *See* 28 C.F.R. § 541.15(h).  The UDC advises the inmate of his rights to be afforded at the hearing before the DHO and asks the inmate to indicate a choice of staff representative, if any, and the names of witnesses he wishes to be called to testify at the hearing and the nature of the testimony they are expected to provide.  *See* 28 C.F.R. § 541.15(i).  These witnesses are listed on the disciplinary hearing notice.  *Id.*

When appearing before the DHO, the inmate is entitled to: (1) make a statement and to present documentary evidence; (2) submit the names of requested witnesses and have them called to testify; and (3) present documents on his behalf.  *See* 28 C.F.R. § 541.17(c).  Witness testimony and documentary evidence may be presented provided the calling of witnesses and disclosure of documents does not jeopardize prison or inmate security.  *Id.*

The DHO considers all evidence presented at the hearing and bases his or her decision on at least some facts, and if there is conflicting evidence, on the greater weight of the evidence.  *See* 28 C.F.R. § 541.17(f).  The DHO makes a determination as to whether or not the inmate committed the charged act(s) or similar act(s) if reflected in the incident report and prepares a record of the proceedings which need not be verbatim.  *See* 28 C.F.R. §§ 541.17(f) & (g).  The record documents the advisement of the inmate's rights, the findings and decision of the DHO, and the specific evidence relied on by the DHO, and includes a brief statement of the reasons for the sanctions.  *See* 28 C.F.R. § 541.17(g).   A written copy of the DHO's decision and disposition must be provided to the inmate, ordinarily within 10 days.  *Id.*

It is relevant to this case that the BOP prohibits inmates from fighting.   *See* 28 C.F.R. § 541.13. Upon finding that an inmate committed this prohibited act, the DHO may direct that the inmate forfeit non-invested GCT or disallow GCT available for a year; recommend disciplinary

transfer; place the inmate in disciplinary segregation up to 30 days; withhold statutory good time; and/or deny privileges such as visitation, commissary, or recreation, for a specific period of time.

In reliance of McKinnon's base file and the declaration of DHO James Moran, Respondent contends that McKinnon's due process rights were not violated during his adjustment review process. He provides the following information:

On January 10, 2009, McKinnon received an incident report based on an incident occurring on January 2, 2009, at the United States Penitentiary in Atlanta, Georgia, when he was involved in an altercation with another inmate. Paper No. 4, Ex. 2, Attachment A This report was issued after staff reviewed security tapes on January 10, 2009, which showed McKinnon in an "embrace" with another inmate in the common area of his housing unit on January 2, 2009. McKinnon was observed then leaving the common area and the other inmate was seen following McKinnon into his cell three minutes later. Medical staff examinations on January 3, 2009, showed that McKinnon had suffered facial injuries (bruised side of face and lips and lateral abrasion to left eye brow) consistent with his being involved in a physical altercation with another person. *Id*.

On January 10, 2009, McKinnon was issued a copy of an incident report. On January 12, 2009, he acknowledged receipt of the report and received a notice of a disciplinary hearing before a DHO, as the UDC had referred the charge to the DHO for further hearing. *Id*. He was informed that he had been charged with allegedly violating Disciplinary Code 201, fighting with another person. On the form McKinnon indicated that he did not wish to have a staff representative or witnesses present during the hearing. *Id*., Ex. 2, Attachments B & C. On January 15, 2009, McKinnon's hearing was held before DHO James Moran. Paper No. 4, Ex. 2, Attachment D. According to Moran, during the hearing McKinnon stated that he and the other inmate "…had words in the

common area. He came in my room…We tussled and locked up. I tripped and hit my head on the sink."[1] *Id.*

Based upon the evidence of: an investigation by the reporting officer, Lieutenant Ragan, who reviewed the video footage from a surveillance camera in McKinnon's USP-Atlanta housing unit; McKinnon's admission that he and another inmate "had words" and "tussled;" and McKinnon's injuries of swelling and pain with laceration and bruising to the left side of the face, DHO Moran concluded that McKinnon had violated Code 201. *Id.* He was sanctioned with 30 days disciplinary segregation, loss of 27 days GCT, and loss of 3 months commissary privileges. Moran also recommended that McKinnon be transferred from USP-Atlanta to another BOP facility.[2]

In his Reply, McKinnon again claims that he cannot be found guilty of violating Code 201, when "no one else was found to have committed a violation of Code 201 along with petitioner." Paper No. 5. He maintains that, at most, the evidence supports a finding of a Code 399 violation for "disruptive behavior." *Id.* McKinnon also repeats his claim that he was not provided a written copy of Moran's decision within 10 days as directed by regulation, which "directly impeded" his due process right to appeal the sanctions that were imposed. He states that neither the National Inmate Appeal Administrator nor General Counsel addressed any of the issues raised here.

Although prisoners do retain rights under the Due Process Clause, prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the

---

[1] On a medical encounter form McKinnon indicated that his injury occurred when he fell from his upper bunk. Paper No. 4, Ex. 2, Attachment A.

possible loss of GCT, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U. S. at 564-571. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. *See Baxter v. Palmigiano*, 425 U. S. 308, 322-23 (1976); *Brown v. Braxton*, 373 F.3d 501, 505-06 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 323 n.5.

The Court finds that the disciplinary process associated with McKinnon's institutional charge meets the aforementioned minimum due process procedural requirements. He received advanced written notice of the charges, was advised of his rights, and received formal notice of the DHO hearing.

Further, the DHO submitted a written statement as to the evidence relied on to determine that McKinnon violated Code 201, and offered specific reasons why the sanctions were imposed. McKinnon was given the opportunity to call witnesses and to present documentary evidence. He chose not to do so, but did testify on his behalf. His testimony did not exonerate him from the Code 201 charge.[3] The Court further finds no evidence of bias or prejudice on the part of the DHO when

---

[2]     The record shows that McKinnon was transferred out of USP-Atlanta on or about April 1, 2009. Paper No. 4, Ex. 1, Attachment A.

[3]     McKinnon complains that he did not receive a copy of the DHO decision within 10 days.

conducting the hearing and reaching his conclusions. Moran did not prepare the disciplinary report, investigate the infraction, or testify as a witness. McKinnon makes no specific allegations that the DHO was biased against him, nor does the record suggest that the proceedings against him were tainted.

Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F.Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.[4]

The proceedings before this Court are not a retrial of the incidents and the undersigned finds that the DHO decision was based upon "some evidence."[5] DHO Moran affirms that in finding some evidence to sustain the Code 201 charge, he relied on: (1) the investigating officer's report; (2)

---

Respondent does not address this claim. The regulation and procedures established by the BOP are intended to meet or exceed the due process requirements prescribed by *Wolff*. *See Von Kahl v. Brennan*, 855 F.Supp. 1413, 1418 (M.D. Pa. 1994). The error set out by McKinnon does not rise to the level of constitutional dimension and do not tend to show that he was denied due process.

[4] The role of the district court is not to afford a *de novo* review of the disciplinary board's factual findings. The district court should simply determine whether the decision was supported by some facts. The sole and only issue of constitutional substance is whether there exists any evidence at all, that is, whether there is any basis in fact to support the action taken by the prison officials. Otherwise, the federal court would assume the task of retrying all prison disciplinary disputes.

[5] Petitioner seemingly argues that prison officials violated his right to due process by finding that his acts violated the prison rule against fighting with another person. Again, due process requires only the existence of "some evidence" to support the revocation of good time credits. *See Hill,* 472 U.S. at 455.

statements made by McKinnon, and (3) medical reports showing McKinnon's injuries. These facts are sufficient upon which to base a prison disciplinary conviction. They constitute "some" facts upon which the DHO was entitled to rely in finding McKinnon guilty of fighting with another person.

Finally, McKinnon takes issue with the post-disciplinary hearing process, complaining that a delay in receipt of the DHO decision impeded his ability to appeal the DHO finding. The record belies this allegation. McKinnon was not provided a copy of the DHO decision until March 6, 2009. This delay does not technically comply with 28 C.F.R. § 541.17(g). McKinnon did, however, file a Regional Administrative Remedy Appeal of the adjustment decision at the Southeast Regional Office on March 31, 2009. Paper No. 7, Ex. 1 at Attachment C. On April 29, 2009, the Regional Director denied the appeal on the merits, in effect concurring with the "DHO's interpretation of the incident." *Id*. McKinnon filed a further appeal, received on May 26, 2009. *Id*., Ex. 1 at attachment D. On August 20, 2009, the Administrator for National Inmate Appeals, Harrell Watts, denied the appeal, finding that the evidence was sufficient to support the DHO's January 15, 2009 finding. *Id*. Thus, McKinnon's claim that the delay frustrated his appeal is utterly baseless.

For the aforementioned reasons the Court concludes that McKinnon's January 2009 disciplinary hearing process comports with due process. The DHO decision shall stand. Habeas relief shall be denied. A separate Order follows.

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

August 6, 2010